IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**DARIUS ALLEN**                                                                                                          **PLAINTIFF**

**v.**                                                       **CIVIL ACTION NO. 5:23-cv-00045-DCB-BWR**

**JAMES BRUMFIELD, HERBERT YOUNG,**
**RICHARD BYNUM and VALERIE WELLS**                                                    **DEFENDANTS**

## REPORT AND RECOMMENDATION

On May 18, 2023, *pro se* Plaintiff Darius Allen, proceeding *in forma pauperis*, filed this lawsuit under 42 U.S.C. § 1983 naming James Brumfield, Herbert Young, Richard Bynum, and Valerie Wells as Defendants. *See* Compl. [1]; Order [6]. When he filed his Complaint, Plaintiff was an inmate housed at the Pike County Jail in Magnolia, Mississippi, *id.* at 1, but he has since been released from custody. Tr. [33] at 7. Plaintiff's claims were clarified at an Omnibus Hearing on March 13, 2024.[1]

Defendants filed a Motion [34] for Summary Judgment on July 8, 2024. Plaintiff did not respond, and the deadline has passed. Order [28]. For the following reasons, the undersigned recommends that Defendants' Motion [34] for Summary Judgment be granted, that Plaintiff's claims against them be dismissed with prejudice, and that this case be closed.

### I. BACKGROUND

Plaintiff was incarcerated at the Pike County Jail from March 29, 2023, to January 6, 2024. Tr. [33] at 7. When he filed his Complaint, Plaintiff was not

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authoring the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a more definite statement), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 1989).

1

"incarcerated because [he] had been convicted of a crime," Compl. [1] at 1, and this record contains no information about any underlying criminal prosecution other than Plaintiff "bonded out" of Pike County Jail and has not been indicted. Tr. [33] at 23.

Plaintiff complains about the denial of medical care for his feet, along with eleven conditions of confinement. *See* Compl. [1] at 4-5; Pl.'s Resp. [8] at 1. All Defendants are sued in their official capacities, except Plaintiff does not indicate if Defendant Wells is sued in her official or individual capacity. Tr. [33] at 24-25. Plaintiff seeks an unspecified amount of compensatory damages and punitive damages, requests that the Court exercise "oversight" of the jail "so this does not continue," and asks that his "charges [be] dismissed and record expunged." Compl. [1] at 4; Tr. [33] at 30.

### A. Denial of Medical Care

Plaintiff alleges that Wells provided inadequate medical care for the "holes in [his] feet" because of "the filthy shower." Compl. [1] at 5. Though she gave him some cream for his feet, Plaintiff believes he should have been sent to the hospital for his condition. *Id.* at 5.

Plaintiff testified that he complained of athlete's foot to Wells, a nurse at Pike County Jail, and Wells "gave [him] some cream and told [him] to clean his toes and put [the] cream on [his feet]." Tr. [33] at 16. He claims that the cream improved the condition of his feet "a little" but did not completely resolve the issue and that when the tube of cream ran empty, he was not given more. Tr. [33] at 16; Pl.'s Resp. [8].

2

Plaintiff testified that since his release he has not seen a doctor concerning the condition of his feet. Tr. [33] at 16.

### B. Unconstitutional Conditions of Confinement

As for housing conditions, Plaintiff raises six primary claims for eleven conditions of confinement. First, he complains that the jail is overcrowded, so inmates are required to sleep "on the floor with no mat or a very thin mat." Compl. [1] at 4. Plaintiff believes that "any illness is quickly passed around" because of this issue, but testified he suffered no injury. Pl.'s Resp. [8] at 1; Tr. [33] at 9-10. Plaintiff also testified he did not sleep on the floor and slept on a mattress with "half" of a blanket. Tr. [33] at 9.

Second, Plaintiff complains of several safety violations, including "black mold in the shower" and dust, dysfunctional cell doors, dysfunctional lighting, exposed wiring, lack of a fire escape, and a dysfunctional call button. Compl. [1] at 4-5; Pl.'s Resp. [8] at 1. He testified that the fire exits are "caged in" making there "no way to get out." Tr. [33] at 20. Plaintiff conceded that he was not injured by these alleged safety violations. *Id.* at 11-14, 20-21, 24.

Third, Plaintiff says that inmates are not given sanitation supplies each day leading to a breeding ground of "illness and insects." Tr. [33] at 14-16; Pl.'s Resp. [8] at 1. He claims that cleaning materials should "come around every day" but admits "sometimes" cleaning supplies were passed "every two or three days." Tr. [33] at 14. Plaintiff attributes his athlete's foot to unsanitary showers in the jail. *Id.* at 15.

3

Fourth, Plaintiff claims that "yard call is not provided on any regular basis." Compl. [1] at 4. Plaintiff testified he suffered no physical injury because of this condition. Tr. [33] at 20.

Fifth, Plaintiff says inmates "have to [beg] for" hygiene items including "toothpaste, tissue, and soap," which is "humiliating and degrading." Compl [1] at 4; Pl.'s Resp. [8] at 1. Plaintiff admitted that he was not physically injured by this condition. Tr. [33] at 18.

Finally, Plaintiff alleges that the jail lacks a case manager which "denies [prisoners] access to the courts and keeps people [in jail] longer than necessary." Pl.'s Resp. [8] at 1. Specifically, he says that "people sit [in jail] for months without seeing a judge for a bond reduction or an update on their case." Compl. [1] at 5. Plaintiff complains "these issues are the responsibility of the jail administration including all named defendants." *Id.* at 1. Plaintiff admitted he was not injured from the absence of a case manager. Tr. [33] at 24.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a

motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis of for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

## III. DISCUSSION

Plaintiff's claims are not cognizable against any named Defendant and should be dismissed with prejudice. To start, Plaintiff has failed to demonstrate Defendant Brumfield's personal involvement in any of the alleged constitutional violations. And Plaintiff has failed to state a constitutional violation with respect to anyone.

5

### A. Plaintiff's claims against Sheriff Brumfield should be dismissed for Sheriff Brumfield's lack of personal involvement.

Plaintiff generally sued Sheriff Brumfield because Sheriff Brumfield "is responsible for all the conditions in the county jail" and "he may not see to any of them personally, but he appoints or hires staff to do so in his name." Pl.'s Resp. [8] at 1. But "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987) (collecting cases). "However, a supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient casual connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 304. Supervisory officials may also be liable if they "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* (quotations omitted).

"The sheriff's general responsibility for supervising the operation of his department is insufficient to establish personal involvement." *Ellis v. Packnett*, No. 5:06-cv-00033-DCB-JMR, 2007 WL 2688540, at *8 (S.D. Miss. Sept. 10, 2007). Plaintiff has failed to show that Sheriff Brumfield committed any wrongdoing that may have caused the alleged constitutional violations. Likewise, Plaintiff has identified no policy of Sheriff Brumfield's that may have caused the constitutional violations he claims. Plaintiff cannot maintain his § 1983 claim against Sheriff Brumfield, and those claims should be dismissed with prejudice. *See McCloud v.*

*Allison*, No. 1:08-cv-00581-RHW, 2009 WL 3214797, at *3 (S.D. Miss. Sept. 30, 2009) (awarding summary judgment to the sheriff in which the plaintiff failed to allege "any personal involvement by [the sheriff] . . ., [or] any casual connection between any wrongdoing by [the sheriff] and the alleged constitutional deprivation").

**B. Plaintiff has failed to establish a constitutional violation.**

### *i.    Denial of medical care*

Plaintiff was a pretrial detainee when the events giving rise to this lawsuit occurred. *See* Compl. [1] at 1. Pretrial detainees and convicted prisoners "look to different constitutional provisions for their respective rights to basic needs such as medical care and safety." *Deroche v. Hancock Cnty.*, No. 1:18-cv-00215-LG-RPM, 2021 WL 2556598, at *5 (S.D. Miss. June 22, 2021) (quotation omitted). "The Eighth Amendment prohibition of cruel and unusual punishment applies to convicted prisoners, while the constitutional rights of a pretrial detainee flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Id.* (quotation, alteration, and ellipsis omitted). "Since the State does punish convicted prisoners, but cannot punish pretrial detainees, a pretrial detainee's due process rights are said to be at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* (quotation omitted).

"A government official violates a pretrial detainee's Fourteenth Amendment right to medical care when the official acts with deliberate indifference to the detainee's serious medical needs." *Id.* "To meet the extremely high standard for proving deliberate indifference, [Plaintiff] must show that the officers were aware of

7

facts from which the inference could be drawn that a substantial risk of serious harm exists, that the officers actually drew the inference, and that the officers disregarded that risk by failing to take reasonable measures to abate it." *See id.* (quotation omitted). Plaintiff "can demonstrate deliberate indifference by showing that an officer 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (quoting *Baughman v. Hickman,* 935 F.3d 302, 309 (5th Cir. 2019)).

But Plaintiff admits that he was seen by Wells for his foot problems during his time at the Pike County Jail and that "she gave [him] some cream and told [him] to clean [his] toes and put [the] cream on it." Tr. [33] at 16. He concedes that the cream "did help [his] feet while it lasted, but the issue persists and [he] has been given no more cream." Pl.'s Resp. [8] at 1. Plaintiff says "[he] feel[s] like she could have done more" because "[he] wrote back request forms to see her, but she didn't . . . see [him] again." Tr. [33] at 25.

By his own admission, Plaintiff has failed to demonstrate that Wells refused to treat him, ignored his complaints, intentionally provided the wrong treatment or any other conduct that would demonstrate deliberate indifferent to his physical health. Although Plaintiff's cream ran out, he has failed to present evidence that he was denied the foot cream or that Wells was aware Plaintiff needed more medication for his feet. *See Horton v. Bay St. Louis Police Dep't*, No. 1:08-cv-01505-HSO-JMR, 2010 WL 3398947, at *7 (S.D. Miss. Aug. 2, 2010), *R. & R. adopted*, No. 1:08-cv-

01505-HSO-JMR, 2010 WL 3398950 (S.D. Miss. Aug. 26, 2010) (finding that plaintiff failed to allege defendant knew "plaintiff was in need of medication" and could not prove he was denied medical treatment); *see also Hall v. Thomas*, 190 F.3d 693, 698 (5th Cir. 1999) (rejecting deliberate indifference claim when the plaintiff missed 180 doses of medication in one year "at least in part, because of [his] own conduct"). "Rather, [Plaintiff] is merely unhappy with the treatment that has been provided and is worried that the medication will not be a permeant remedy for his skin condition." *Miller v. Hall,* No. 4:18-cv-00077-RP, 2018 WL 3785452, at *4 (N.D. Miss. Aug. 9, 2018). "Such an allegation fails to rise to the level of deliberate indifference." *Id*.

As for Plaintiff's claim that he should have been taken to a hospital, "it is well-settled that a prisoner's disagreement with a course of treatment, without more, fails to establish deliberate indifference." *Jordan v. Perry Cnty.*, No. 2:14-cv-00060-MTP, 2016 WL 1091119, at *4 (S.D. Miss. Mar. 21, 2016); *see also Campbell v. Fisher*, No. 1:16-cv-00141-JCG, 2018 WL 1247881, at *7 (S.D. Miss. Mar. 9, 2018) (finding that defendant's "failure to arrange for [p]laintiff to see a burn specialist does not constitute deliberate indifference to [p]laintiff's medical needs").

Nor did Plaintiff indicate whether he filed suit against Wells in her individual or official capacity. Tr. [33] at 25. Although "absent an allegation of Defendant [Wells's] personal involvement, Plaintiff's Complaint fails to state an individual capacity claim for denial of medical treatment." *Horton*, 2010 WL 3398947, at *7. Plaintiff has failed to allege Wells's personal involvement and has not shown he suffered a Fourteenth Amendment violation.

### ii. *Unconstitutional conditions of confinement*

"The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a 'condition of confinement' or an 'episodic act or omission.'" *Seal v. Broadus*, No. 1:08-cv-01495-HSO-JMR, 2010 WL 537141, at *4 (S.D. Miss. Feb. 11, 2010) (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997)). "A conditions of confinement claim is a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement." *Coleman v. Hogan*, No. 2:16-cv-00131-KS-MTP, 2018 WL 1998343, at *3 (S.D. Miss. Mar. 12, 2018) (quotation omitted), *R. & R. adopted* by 2018 WL 1998524, at *1 (S.D. Miss. Apr. 27, 2018). "In order to succeed on a claim alleging unconstitutional jail conditions, a pretrial detainee must establish that the complained-of conditions have been imposed for a punitive purpose and that they have resulted in 'serious deficiencies' in providing for his 'basic human needs.'" *Id.* (quoting *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 454 (5th Cir. 2009)).

The Constitution is not concerned with a "*de minimis* level of imposition" on pretrial detainees. *Ingraham v. Wright*, 430 U.S. 651, 674 (1977). "The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment." *Lee v. Hennigan*, 98 F. App'x 286, 288 (5th Cir. 2004). Thus, a prisoner seeking to recover compensatory damages[2] on a conditions of confinement claim must establish a physical injury that

---

[2] Any request for injunctive relief was mooted by Plaintiff's release from custody. *See Smith v. City of Tupelo*, 281 F. App'x 279, 282 (5th Cir. 2008) ("A claim for declaratory or injunctive relief based on conditions of confinement is rendered moot upon the prisoner's release or transfer from the facility.").

is more than *de minimis*. *Alexander v. Tippah Cnty.*, 351 F.3d 626, 631 (5th Cir.2003) (citing 42 U.S.C. § 1997e(e)).

Plaintiff complains about six primary claims for eleven conditions of confinement at the Pike County Jail including: (1) overcrowding, (2) various safety violations, (3) insufficient sanitation, (4) lack of opportunity for physical exercise, (5) lack of personal hygiene items, and (6) lack of a case manager. Compl. [1] at 4-5. Pl.'s Resp. [8] at 1.

***Overcrowding.*** "Overcrowding of persons in custody is not *per se* unconstitutional." *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004). Plaintiff testified that he lived in a "16-man zone" with thirty, thirty-two, or thirty-five other inmates, Tr. [33] at 9, so some were required to sleep on the floor with "no mats" or "just blankets." *Id.*

But "Plaintiff has failed to show that any overcrowding at the [Pike] County Jail amounted to punishment." *See Jordan v. Johnston*, No. 2:09-cv-00244-KS-MTP, 2011 WL 3924825, at *5 (S.D. Miss. Aug. 18, 2011), *R. & R. adopted by* 2011 WL 3924836, at *1 (S.D. Miss. Sept. 6, 2011). He "does not enjoy a constitutional right to an elevated bed." *Crook v. McGee*, No. 2:07-cv-00167-MTP, 2008 WL 53269, at *2 (S.D. Miss. Jan. 2, 2008). And Plaintiff admitted that he suffered no injury and slept off the floor on a mattress with part of a blanket. Tr. [33] at 9-10.

***Various safety violations.*** Plaintiff complains about black mold in the shower, dust, dysfunctional cell doors, dysfunctional lights and exposed wiring, lack of fire exits, and lack of functional emergency call buttons. Compl. [1] at 4; Pl.'s Resp.

11

[8] at 1. He also complains that there is only one caged exit. Tr. [33] at 20. Plaintiff suffered no physical injury as a result of these conditions. *Id.* at 11-12, 20-21, 24. Again, "Plaintiff has failed to show that such conditions amount to punishment and are not reasonably related to a legitimate governmental purpose." *See Crook*, 2008 WL 53269, at *2.

*Insufficient sanitation.* Plaintiff does not claim that inmates were completely denied cleaning supplies. Instead, he testified: "[T]hey have cleaning supplies that come around . . . . [T]hey are supposed to come around every day, but sometimes they might not come around but every two or three days." Tr. [33] at 14. "[W]ith there being so many people in one zone," they did not bring the cleaning supplies often enough. *Id.* Plaintiff testified that lack of daily sanitation in the showers caused him to contract athlete's foot. *Id.* at 15.

Warden Young testified by affidavit that "each day, each inmate zone received a sanitation cart with cleaning supplies with garbage bags, comet, bleach in a spray bottle, a water hose, and a toilet brush," along with "a broom and a mop/bucket combo." Mot. [34-2] at 1. He added that "each zone received a bucket pre-made with bleach mix" on three days each week, and a "pine-sol mix" was provided on the other four days. *Id.*

Thus, the parties agree that inmates were provided supplies "to do any . . . cleaning they [saw] fit." *Rowell v. Jackson Cnty.*, No. 1:08-cv-01368-HSO-JMR, 2010 WL 1528512, at *6 (S.D. Miss. Mar. 9, 2010), *R. & R. adopted* by 2010 WL 1533090, at *1 (S.D. Miss. Apr. 14, 2010).

12

Further, "injuries from . . . rashes or skin conditions are found to be *de minimis.* *Smith v. Banks*, 3:17-cv-00157-CWR-LRA, 2019 WL 5699624, at *4-5 (S.D. Miss. June 7, 2019) (observing that "there are many cases finding that dirty showers, rashes, and minor skin conditions, fail to state a constitutional claim") (collecting cases); *see also McCarty v. McGee*, No. 2:06-cv-00113-MTP, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation" because plaintiff did not demonstrate that the "conditions amounted to punishment and were not reasonably related to a legitimate government purpose."); *see also Mahmoud v. Bowie*, 234 F.3d 29, *1-2 (5th Cir. 2000) (finding no constitutional violation and dismissing plaintiff's claim that the showers were in unsanitary condition as *de minimis*).

Because "cleaning supplies were made available to [Plaintiff], mitigating any intolerable conditions," and his injury is *de minimis,* he has failed to demonstrate a constitutional violation arising from this claim. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998).

***Lack of opportunity for physical exercise.*** Plaintiff's claim for lack of "yard call" suffers from the same weaknesses. *See* Mot. [34] at 2. Plaintiff has failed to show that the alleged lack of exercise was imposed for a punitive purpose or that he suffered any injury because of this condition. The only mention of this issue in the record is conclusory, *id.*, and fails to demonstrate a triable issue on the alleged lack of opportunity for physical exercise. *See Jarrell v. Pearl River Cnty. Sheriff's Dep't*,

No. 1:08-cv-01395-HSO-JMR, 2009 WL 4928295, at *2 (S.D. Miss. Dec. 18, 2009). At any rate, "[t]he Fifth Circuit has held that neither a prisoner nor a pretrial detainee has a *per se* constitutional right to outdoor exercise or recreation." *Coleman*, 2018 WL 1998343, at *4.

***Lack of personal hygiene items.*** Plaintiff asserts his custodians did not "regularly" provide "hygiene products," including "toothpaste, tissue [paper] and soap . . . ." *See* Compl. [1] at 4. He says that "having to beg for [these items] is humiliating and degrading." Pl.'s Resp. [8] at 1. These allegations demonstrate the provision of hygiene supplies at times, although perhaps not as often as Plaintiff would have preferred.

Even so, the record contains no evidence on this claim. Plaintiff has not shown that personal hygiene items were withheld from him for a punitive purpose, nor has he shown any injury arising from this claim—much less a greater-than-*de-minimis* injury. Plaintiff "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quotation omitted). "To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact." *Jarrell*, 2009 WL 4928295, at *2. Plaintiff has failed to do so, and this claim should also be dismissed with prejudice.

***Lack of a case manager.*** Finally, Plaintiff alleges that because the Pike County Jail lacks a case manager "people sit [at the jail] for months without seeing a

14

judge for a bond reduction or an update on their case." Compl. [1] at 5. In Plaintiff's opinion, "these issues are the responsibility of the jail administrator including all named defendants" and "[deny] [prisoners] access to the courts." Compl. [1] at 5; Pl.'s Resp. [8] at 1. Plaintiff also testified that he was not informed about his criminal charge—or any indictment—that resulted in his confinement at the jail. Tr. [33] at 21-23.

"Prisoners generally enjoy the constitutional right of access to the court," which "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "In order to recover for a denial of access to the courts, an inmate must show that an actionable claim involving a challenge to a sentence or conditions of confinement . . . has been lost or rejected, or that the presentation of such claim is being prevented." *Jones v. Spurlock*, No. 9:18-cv-00205, 2019 WL 2521251, at *2 (E.D. Tex. May 14, 2019) (quotation and alterations omitted), *R. & R. adopted by* 2019 WL 2515320, at *1 (E.D. Tex. June 17, 2019). Plaintiff has not shown that his claim has been lost, rejected, or prevented. Plaintiff admitted that he wrote a letter "to the people up front of the jailhouse" asking about his indictment status and received a response that "it could take over a year or better." Tr. [33] at 23; *see generally Terry v. Hubert*, 609 F.3d 757, 761-62 (5th Cir. 2010).

To the extent Allen argues that he was denied a speedy trial, he does not have a cognizable claim under Section 1983 if he was never indicted. *Burnett v. Pearl River Basin Narcotics Task Force*, No. 2:10-cv-00267-KS-MTP, 2011 WL 4036688, at *5

15

(S.D. Miss. Sept. 12, 2011); *see also United States v. Carlock*, 806 F.2d 535, 549 (5th Cir. 1986) ("There is no sixth amendment right to a timely indictment."). Nor can Allen mount a due process claim based on pretrial delay without showing the delay was "intentionally undertaken by the government for the purpose of gaining some tactical advantage over the accused in the contemplated prosecution, or for some other impermissible, bad faith purpose." *See Quinn v. Roach*, 326 F. App'x 280, 291 (5th Cir. 2009). Plaintiff has shown neither.

In any event, Plaintiff admitted that he has "bonded out" of jail and has yet to be "indicted." Tr. [33] at 23-24. Plaintiff's right to access the Court has not suffered by the lack of a case manager, nor has he identified any injury or other constitutional interest affected by this allegation.

## IV. RECOMMENDATION

The undersigned recommends that the Motion [34] for Summary Judgment filed by Defendants James Brumfield, Herbert Young, Richard Bynum, and Valerie Wells, be granted and all claims against these Defendants be dismissed with prejudice.

## V. NOTICE OF RIGHT TO APPEAL/OBJECT

Within fourteen days of being served with a copy of this Report and Recommendation, any party may serve and file written objections with the Clerk of Court. An objecting party must specifically identify the findings, conclusions, and recommendation to which he objects. Within seven days of service of the objections,

the opposing party must either serve or file a response or notify the District Judge that he does not intend to respond to the objections. L. U. Civ. R. 72(a)(3).

The District Judge shall make a *de novo* determination of those portions of the Report and Recommendation to which objection is made. The District Judge may accept, reject, or modify in whole or in part, the findings, or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendation of the Magistrate Judge shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *See Wallace v. Miss.*, 43 F.4th 482, 494-95 (5th Cir. 2022) (collecting cases).

**SIGNED**, this the 27th day of January 2025.

*s/ Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE